THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE WESTMINSTER HEIGHTS COMPANY, Respondent, *v.* BIRD S. COLER, President of the Borough of Brooklyn, Appellant, Impleaded with the BROOKLYN HEIGHTS RAILROAD COMPANY.

Second Department, July 23, 1907.

Surface railroad — consent by highway commissioner over lands not then condemned.

A consent by a board of highway commissioners to the construction of a railroad is not a grant of a right, title or interest in land, but a more condition precedent to the right to build a railroad. Hence, such consent is not void, although at the time the route was projected over private property in which the public had not yet acquired any right.

When five years have not elapsed since the giving of the consent and within that time the street is condemned for public use, the right acquired under the prior consent may be enforced.

APPEAL by the defendant, Bird S. Coler, president of the borough of Brooklyn, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 19th day of March, 1907, granting the relator's motion for a peremptory writ of mandamus.

*James D. Bell* [*William B. Ellison* with him on the brief], for the appellant.

*Martin W. Littleton*, for the respondent.

Order affirmed, with ten dollars costs and disbursements, on the opinion of Mr. Justice MAREAN at Special Term.

WOODWARD, JENKS, HOOKER, GAYNOR and RICH, JJ., concurred.

The following is the opinion delivered at Special Term:

MAREAN, J.:

On February 5, 1894, the highway commissioners of the town of Flatlands consented to the construction of the railroad.

It is agreed that they were the proper local authority to consent,

if consent could then be effectually granted at all, but it is claimed that their consent was a nullity, the route consented to being at the time altogether over private property in which the public had not as yet acquired any rights whatever.

Of course, if the significance of a consent is that it operates as a grant of either right, title or interest in land, then it was a nullity. A grant without covenants does not operate upon after-acquired interests. But such is not the significance of a consent. It is a mere condition precedent upon the performance of which a right to build the railroad as against the public arises by operation of law.

Whether the street had been physically opened or regulated is of no consequence; the material consideration is that no rights of any kind in the *locus* had been acquired by the public at the time the consent was given.

There are reasons of much force for a conclusion that the statute did not contemplate a consent which was not at the moment effective for any purpose, or required to remove an obstacle to a presently entertained scheme to build, as distinguished from a scheme to build at some indefinite time in the future if the *locus* should then be a public street and if it should then appear to be likely to be profitable. I should be inclined to that conclusion if the question were an open one; but I do not think the question is an open one. It seems to have been settled in *People ex rel. Woodhaven Gas Co. v. Deehan* (153 N. Y. 528). There was by law in that case a right in the Woodhaven Gas Company to use the public streets of the town of Jamaica upon condition that the local authority should consent. A consent was given in 1871, long before the *locus* in question became a street, at a time when it was purely private property.

The municipal authorities of the town of Jamaica had given the consent, but at the time the gas company undertook to lay its mains the village of Richmond Hill had been incorporated and the power to consent had passed to the village authorities. It was not claimed in that case that the consent was inoperative because given before there was any street. It does not seem to have occurred to either court or counsel that such a proposition was even debatable, but the question was patently involved and necessarily determined in the negative by the judgment.

The question mainly discussed was whether the grant by the statute and the consent by the local authority did in their terms comprehend streets not then existent. No such question is presented here, as the consent plainly specifies the particular *locus* in question by unequivocal description.

It is urged that there is special significance in the expression, local authorities having control of that part of a street or highway, etc. I do not think so. The purpose was to point out the particular local authority in cases where two or more had each some function touching streets. In the present case the town authorities granting the consent had in 1894 control of all streets within the town, and were then admittedly the only possible consenting power.

The question is not of the identity of the consenting power nor of the scope and meaning of the consent, but whether the law contemplated a consent at all in anticipation of a situation in which it would be presently effective for any purpose.

It should be noticed in this connection that there is no suggestion that the consent was given corruptly or in bad faith, and that the opening of the street in the near future might well have been expected.

I feel myself bound by the authority of the case cited, and it remains only to consider whether the right to build has expired. It is not five years since the consent became effective. The street was condemned for public use within that period. If the consent was ever effective, as I have concluded, the rights acquired have not ceased.

Counsel for the city concedes that the relator has standing to compel the issuance of the license if it be the duty of the respondent to issue it.

Motion granted.